Good morning and may it please the court, Gia Kim appearing on behalf of appellant Jacqueline Anderson. I'd like to reserve three minutes of my time for rebuttal. Okay. Thank you, Your Honor. This court should vacate Ms. Anderson's conviction under section 115 because an employer, an employee of a government contractor is not a federal official whose killing would be a crime under section 1114. And to determine what that statute covers, what 115 covers, this court must begin with the statutory text. And the key phrase here, an official whose killing would be a crime under section 1114 is undefined. In that way, it differs from the first three categories of targets protected by the statute, namely a United States official, a United States judge, and a federal law enforcement officer. All of those categories are specifically defined in the statute itself. And it's a role of statutory construction that undefined statutory terms typically take their ordinary meaning. And as we've argued in the briefs, the ordinary meaning of official as evidenced by multiple dictionaries, and confirmed by case law, is that of someone who definition. The DC Circuit confirmed this in the recent Al-Bawool case, where it says Congress regularly uses this term official to refer broadly to government employees. And this court in the Jones v. St. Paul fire case, which was an unpublished decision, did not specifically define official but at the minimum, the plain meaning of that term does not cover government contractors. And in that case, the government contractors were attorneys who were providing, you know, doing official duties, they were providing public defense. Can I interrupt you and ask the question, do you regard 1-1-1-4, the killing statute, do you regard that as defining official, that is to say, is everyone who is covered under the 1-1-1-4 statute, included in the definition of officer under 1-1-5? We do not regard 1-1-1-4 or 11-14 as defining official, and specifically because 11-14 doesn't purport to define the term official, it does not even use the term official, it does use the term officer in conjunction with employee or someone assisting. But what the district court did here in the third circuit did in Bancroft and the government is urging this court to do is to disregard the plain meaning or skip over the plain meaning and look to 11-14 to define official, which we believe doesn't follow because that statute has never defined official. Counsel, but aren't you asking us to disregard some of the language in 1-1-1-4? In effect, yes, but we are asking this court to enforce the language in 1-1-5, which says an official who's killing would be a crime. But is there a task in statutory interpretation to give effect to all of the language that's being considered? Yes, Your Honor, and we think that this court must give effect to the term official. It should not read that term to mean person or individual as Congress has used in other statutes. Congress certainly knew how to sweep in everyone covered by 11-14, which has changing over time. And it has used words like person in the assault statute. It's used words like individual in more recent statutes that post-date this threat statutes. However, in two threat statutes, it has used the term official, which we believe must be given its ordinary meaning. Counsel, under your interpretation, then how do we give effect to the phrase assisting such an officer or employee? How do we give effect to that language under your interpretation? Well, that language is given effect in terms of the statutes where it's specifically referenced. So, in the killing statute, yes, those people are certainly covered, and Congress made that clear. In the assault statute, it says any person in 11-14. So, those people are covered. In 119, it says any individual covered by 11-14. And in 1521, it also says any individual. So, this court can give effect to that where Congress intended such an effect. However, in these other two statutes, the threat statutes, it used the term official. And this court must give effect to that term. As the D.C. Circuit said in a different context, in Al-Balul, official is used in that statute. It must have some meaning. And here, the ordinary meaning of that refers to federal officers and employees. And it results, and whatever this court thinks of that policy choice, it's certainly not an absurd one to draw a line between certain crimes against contract employees versus other sorts of crimes. Ms. Kim, I'm inclined to view this case as, if I can use the term, one of Venn diagrams. That is to say, there's a coverage under 115 of the official, and there's a coverage under 11-14, which is everyone defined as protected from killing under that. They are not identical, but they overlap. And in order to find a conviction, you've got to find where the two circles overlap. Certainly, Your Honor. There is some overlap and maybe significant overlap between those statutes. But they've got to be, a person has to be, fall into both categories, even though the categories are not identical. Yes, Your Honor. Grammatically, there's a noun, an official, it's a status-based noun, whose killing would be a crime, which is a second requirement for coverage under the threat statute. Counsel, I know you want to save time for rebuttal. Let me just get one question in. I know it's hard, but I'm over here. So, you said it would not be an absurd result, and I'm just trying to understand why Congress would intend for our court security officers, who were working in 1996, because I was a law clerk in 1996, and I remember them, the ones who greeted me my first day at work. Why would Congress intend for them not to be protected from people walking up and saying, you know, if you don't let me in the building, I'm going to blow your head off? Why would Congress want to exclude them from protection under 115? I think, Your Honor, the threat statute itself, even targeting probably the officials we see as susceptible to these threats, the high-ranking elected officials, judges, and law enforcement officers, is a statute of relatively recent vintage. It is certainly not as old and long-standing as the assaults and the killing statutes. So, I don't think the legislative history sheds light on what Congress was thinking about the federal workforce or contract employees at that time. It's possible that, you know, with respect to assaults and killings, persons assisting are more in the zone of, you know, vulnerability as opposed to threats, which are more individually targeted to specific people. But I don't think the legislative history casts light on that, and I don't think we need to determine exactly why Congress would or would not have done it. We look at the language Congress used to determine what its purpose was, and here we don't believe, at a minimum, that Congress has spoken clearly enough to prohibit this conduct. And if there is doubt about what Congress intended, this Court should also invoke the rule of lenity. Counsel, if Ms. Anderson had, in fact, killed the court security officer, is it your position that she could not have been prosecuted under Woman 5? Well, that is the threat statute. She certainly could have been prosecuted under 1114, which is the killing and covers the broader, in the Venn Diagram, the broader circle of people. Yes. Now, absent the Venn Diagram, I'm not sure that I agree with the Venn Diagram analogy. Under the plain language of the statute, if she had killed him, would she have been able to be prosecuted? Yes, under 1114, which is the murder statute relating to federal employees. Because he would be assisting, he would be assisting. Yes, Your Honor. But so why isn't that same definition active under 115? I don't understand why you make the distinction if she had actually murdered him, that she could be prosecuted. But the fact that she threatened him and didn't murder him, she couldn't be prosecuted. I don't understand why you make a distinction there. I see I'm running out of time, but if I may answer. Let me interrupt. Please answer the question and we will make sure you get a chance to respond. So whatever questions the bench has, make sure you answer as you need to, and we'll make sure you get a chance to respond. Your Honor, because 115 uses the term, an official whose killing would be a crime under section 1114, it does not say any person whose killing would be a crime. It does not say any individual, so it doesn't absorb 1114 in its entirety. And we argue that's at least ambiguous, and the government in its supplemental excerpt of record at 26 said, ask the district court to define this because it said otherwise, if you're let the plain meaning of the term official, that plain meaning at supplemental ER 26 is ambiguous as to whether it covers these contract employees. Okay, any further questions from Ms. Kim at this point? I may have one. If we could give her some time for rebuttal, Judge Fletcher, I may have some at that time. Oh, of course we will. No, I know I already said we'll give her a chance to respond. Thank you. Mr. Friedman. Good morning, Your Honors. David Friedman of the United States. May it please the court. In the government's view, the issue with the defendant's approach to the statute is that she seeks to interpret the term official and 115 by essentially looking at that word in isolation and then weighing how many dictionaries support each side's interpretation. And while this court should certainly focus on the text of 115 and interpreting the statute, I think what Supreme Court has recognized and this court has recognized is that looking at the plain language also involves looking at the statutory structure, looking at how the 115 and 1114 fit together, the context, the purpose, and if absolutely necessary, looking at the legislative history as well. Mr. Friedman, is it your view that every person covered under 1114 is a person covered under 115? Yes, Your Honor. So you're regarding that essentially as a definitional as to who constitutes an official? Yes, Your Honor. We think the cross-governance, the 1114, defines that fourth category of protected officials. That's not how 115 reads. 115 says an official, and now I'll use slightly different words, it says who's killing, but an official, if the killing of that official would be covered under 1114. It doesn't say that everybody under 1114 is an official. It just says you've got to be an official and you've got to be an official whose killing would be covered under 1114. Your Honor, that is what the text says, but why? Exactly what it says, which means that 1114 is not the definition of 115. Well, Your Honor, what the Third Circuit has recognized and what the Eighth Circuit has recognized is that that phrase, an official who's killing is who would be a crime under 1114, is meant to cover all of the people listed in 1114. And the primary reason the text dictates that interpretation is because there are four categories of protected individuals under 115. The first three are defined terms. So what the Third Circuit and the Eighth Circuit have recognized is that when you have a statute with four protected categories, three are defined, it makes sense that the fourth category is also a defined term. It's not, and Congress did not include, intend to use the word official to limit the scope of 115, particularly when 1114 doesn't even use the term official. So defendants are- But that gets us to a rather extreme definition of official, so that you're now including an as an official of the United States. Your Honor, I don't think that's an extreme position. And I think, in fact, the defendant- It is the position, correct? Our position is yes, that that term official who's killing would be a crime under 1114 includes everyone who's covered by 1114, which includes persons assisting federal officers. Who's an employee of a federal contractor. That's correct. But that employee, of course, would have to be assisting someone with their official duties, or they would have to be retaliated against on behalf of their official duties. So I think that does limit sort of the absurdities. And I think, again, the defendant's position is actually quite extreme in the sense that no private contractor, no individual who's assisting the government, no matter how important their role is, no matter how critical they are to the mission, is covered by 115. And I think something Judge Owens noted and something Judge Carney noted in his order is that, you know, court security officers are independent contractors. And it's sort of hard to believe that Congress would not have wanted someone who's in that position to be covered by the statute. No, Congress makes mistakes. Congress does not always pass a statute that makes perfect sense to an outsider or even to Congress. We're stuck with what the words are. That's certainly true. But this court, this court can look at the statutory structure, which I think indicates that that fourth term is also also intended to be defined term by virtue of the cross reference. It can look at the statutory purpose in this case, which I think is clear that both of these statutes are meant to protect federal functions and federal employees. This court wants to consult the legislative history. I think the only report on this statute indicates that fourth category was supposed to cover all the persons listed in 1114. And I would also just state, I don't think the defendant has necessarily established that the ordinary meaning of official only refers to federal employees and officers. The defendant cites a series of dictionaries, but as she notes, there's a dictionary definition that takes a functional approach. There's a Webster's dictionary definition that says an official is someone who carries out functions on behalf of the government. And in fact, if you look at the D.C. Circuit decision that the defendant mentioned several times, Al Bahul, in the footnote to the key sentence that cited from that opinion, the D.C. Circuit noted that Congress has defined official expansively. And one of the statutes it noted was the public bribery statute, 18 U.S.C. 201. That actually does cover, it does cover private contractors. So I think official is a term that how do you respond to the Euston generous argument? The Euston generous argument in the sense that it's defined by 1114 or I'm not sure. I'm not sure I understand. I'm sorry, your honor. Are you familiar with the Euston generous canon? I believe so in general, that the term official is defined by the context. To some extent, the context gives it meaning. To translate it in English is basically birds of a feather flock together. You're supposed to have, you can take the meaning of an undefined term from the surrounding terms, and it will be like the other terms, particularly when it comes at the end of a list. So that if you have three defined terms, one of them is the president and vice president. One of them is a, and so on. All of a sudden you're telling me after you've had those three very clear definitions that are pretty high level officials, all of a sudden you're telling me that official in the fourth category is a private employee of a private contractor. Well, your honor, I think that all of a sudden you've got three crows and a pigeon. Well, I think that actually cuts the other way because if you have four protected categories and you're saying that the first three are defined in a very particular way, I'm not sure it makes sense to say that Congress decided to rely on the purported ordinary meaning to refer to 1114 and to use the word official to limit the scope of that statute when 1114 doesn't even refer to anyone as an official. So defendant is asking you to define official as United States officer employee. I think something the district court noted is that if Congress intended that result, it could have said that 115 only protects an officer employee who's killing would be a primary 1115, 1114. Instead it uses more general term. And I think again, when you look at the structure, which is you have three defined terms, I think the natural inference is that the fourth term is also defined and what the third circuit and a circuits recognize is that it should be defined by reference 1114. And that's ultimately the interpretation that's most consistent with the purpose, the structure and the legislative history. So, so for these reasons, we do think it's covered. We do think that that last category protects everyone. And I think it, it also, it just, it makes sense. Again, you think of this case, you have officer Bacchus who was protecting a federal building, who was assisting two different federal agencies, who was acting on behalf of the federal protective service. And, you know, in the federal protective services, where it's there, he's the eyes and ears of that agency. I don't think there's any reason to think Congress would have wanted to exclude people from, from, from the reach of the statute. And I understand that Congress has used different language on their statutes, but those were passed at far different times. And I think when you look at the language of this one, especially with the purpose, especially with the legislative history, I think the, the, the conclusion is relatively clear that that fourth category did cover officer Bacchus. I, I'm happy to answer any other questions from the court about either statutory construction or, or our waiver or other argument. Otherwise I'll, I'll submit it in our brief. Any further questions on the bench? No. Nope. Thank you. Let's put two minutes on the clock for Ms. Kim and see where we go from there. Thank you, Your Honor. With respect to who Congress chose to cover at different times, it's important to keep in mind our sort of second argument here, which is, it is, there is a specific reference pointing to 1114. And 1114 at the time, 115, the threat statute was enacted, covered officers and employees. It did not even cover everyone at that time. The killing statute at that time did not cover the president, did not cover members of Congress. So I don't think it's necessarily, we can draw any conclusions by who is covered for certain protections at any time, especially contract employees. And I think the question is not to figure out why Congress would have done this, but when you apply the plain meaning of statute, as the Supreme Court has repeatedly instructed this court to do, and not rely on some abstract intuition, as they have said about which policy is preferable, are both of those policies plausible and not irrational? And we would submit they are. And we would submit that Ms. Anderson's argument has the better of the plain meaning, but it is at least ambiguous enough as to the coverage to trigger the rule of lenity in this case. So counsel, what, what, under your view, what is the purpose of that last phrase in 115 A1, an official who's killing would be a crime? Who is that? It is federal officers and employees. So I, I think, not if we're not talking about if that's the case, if it's federal officers and employees, then wasn't this guy assisting a federal officer and employee under 114? Yes, but he is not himself a federal officer and employee. So you must have both. You must have, again, it's important to keep in mind that the statute at the time did not cover all officers, employees that came later. So I think there's a distinction, for instance, in the district court's view and the government's view, I am a federal employee performing authorized by the government to perform certain official duties. There are also attorneys appointed under the criminal justice act, private attorneys. We would say that the plain meaning official does not include those private attorneys as this court indicated in the Jones case as officials. So in it, so let me ask you this. So then in a U.S. attorney's office situation or in a federal defender's office situation, you have certain people who are employees, but you also have certain people who are contractors. And effectively they do exactly the same thing. It's just the federal government funds a certain number of slots one way and it funds certain slots the other way. So a secretary who is a technically employee, a FERS employee, they would have the benefit of 115, but the person right next to them who's on a contract would not. Is that correct? Under 115, I would argue, under 1114. Understood. But under your reading, if I threatened employee A, that's a crime. If I threatened contractor B, they perform the same function in the office, that's okay. Yes, we would argue that it's not a functional definition. It is that official as a noun and not as the adjective is a status based definition. And it's the government can make these, draw these and withhold them from employee B who is performing the same functions. Counselor, you don't think that's an absurd result? That two people who are sitting side by side doing the exact same job, one is protected under the statute and one isn't? You don't think that's an absurd result? I don't think so, Your Honor, because that's the way the Congress wrote it. I don't think, for instance... Hold on, but you can't answer her question by saying it's not an absurd result. The Supreme Court has said many times, you don't reach absurd results. The answer to her question cannot be, well, Congress did it, so it can't be absurd. You got to explain why her question, why is that not absurd? Certainly, Your Honor. Well, within the Federal Defender's Office, to take an example, I believe everyone here is a federal employee. If there are other offices where there are contractors sitting on the bench, it is not absurd to regard someone who is an official, who is an employee of a private corporation, cannot also be in common parlance of federal official. If we're talking absurdity, I realize this is another area of law, but I've just been hearing, reading reports of the extreme difference accorded to veterans who fight in Afghanistan compared to contractual employees who fight side by side with our veterans. They are treated very differently, even though they're performing exactly the same function, and I would argue it is rather absurd to have about half of our fighting force in Afghanistan be active members of the military, and the other half being contractors, which they are, it's more or less half and half, and we treat the two of them very differently in terms of, for example, benefits. I think that's absurd, but that's very clearly how the statutory system works. Yes, Your Honor. Congress has drawn these lines between employees and contractors, and certain seemingly federal functions have been outsourced to employees of private corporations, private attorneys who are solo practitioners. That does not make them federal officials. Counsel, am I correct that there is no case, no circuit case that has interpreted the statute the way you have? That is correct, Your Honor, but I think it seems to be a sign that this claim perhaps is not brought very often. The two circuit cases involve low-level federal employees, and whether they required some certain level of discretionary authority to be a federal official, something beyond routine duties, this interpretation of the statute appears to be rare, and there is no case authority either way saying that government contractors are covered or not covered under the statute and under the theories and claims that we have raised. Okay, any further questions from the bench? No further. Thank both of you for your useful and skillful arguments. I don't think it is remiss of me to comment on behalf of Judge Owens and myself that we are pleased to see our former clerks back before us, and obviously we decide cases on the merits not because of who our clerks are, but we're glad to see both of you. Thank you. Case is now submitted.
judges: FLETCHER, RAWLINSON, OWENS